**UNITED STATES BANKRUPTCY COURT**
**WESTERN DISTRICT OF VIRGINIA**
**Lynchburg Division**

| | |
|---|---|
| In re OAKWOOD COUNTRY CLUB, ) | Case No. 10-60246-LYN |
| INCORPORATED, ) | |
| ) | |
| Debtor, ) | |
| ⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯ ) | |

## **MEMORANDUM**

This matter comes before the court on the first motion by Oakwood Country Club, Inc. ("the Debtor" or "the Debtor Club") for compensation for its counsel, Woods Rogers PLC ("Woods Rogers").

### *Jurisdiction*

This court has jurisdiction over these matters. 28 U.S.C. §§ 1334(a) & 157(a). This is a core proceeding. 28 U.S.C. § 157(b)(2)(A)&(N). Accordingly, this court may render a final order. This memorandum shall constitute the court's findings of fact and conclusions of law as directed by Fed.R.Civ.P. 52 which is made applicable in this contested matter by Fed. R. Bankr. P. 9014(c) and 7052.

*Facts*

The Debtor is a social club that was founded in 1914. The Debtor once consisted of 650 members but was reduced to 229 members on the date of petition. The Debtor has about 29 employees. The Debtor owned real property consisting of approximately 85 acres of land and improvements thereon ("the Real Property"). The land may be divided into two parcels. The first parcel consists of approximately 77 acres on which is a nine-hole golf course ("the Golf Property"). The second parcel consists of approximately eight acres of land ("the Clubhouse Property") with improvements consisting, among other things, of a clubhouse, swimming pool and tennis courts. In its schedules, the Debtor valued the Real Property with improvements at $1,450,000.00.

As of the date of petition, the Debtor's secured debts consisted of a debt in the approximate amount of $725,000.00 to Wachovia Bank, a Debt (actually individual debts) owed to members of the Debtor in the approximate total amount of $540,000.00 ("the OIT Debt"); a debt in the amount of $10,000.00. Priority claims totaled approximately $104,000.00. The Debtor scheduled unsecured claims in the amount of $941,568.53. This amount consists primarily of a claim in the amount of $725,000.00. The creditor filed the claim in the amount of $1,200,000.00.

Pre-petition, the Debtor unsuccessfully attempted to market the Real Property. On January 29, 2010, the Debtor filed a voluntary chapter 11 petition with the Clerk of this Court. On February 24, 2010, the Debtor entered into an Asset Purchase Agreement ("APA I") pursuant to which the Debtor proposed to sell substantially all of the Real Property and the Debtor's personal property to EWP (Oakwood) Venture, L.L.C. ("the Original Buyer"). In return, the

Original Buyer would pay or assume virtually all of the secured, administrative, and priority claims of the Debtor.

At the hearing on the motion to approve the sale, it was brought to the court's attention, by parties opposing the motion, that the Original Buyer had previously entered into another Asset Purchase Agreement ("APA II") to sell the Clubhouse Property and personal property to a recently created entity, Oakwood Swim & Tennis Club, L.L.C. ("the New Club"). The president and board of the New Club would have been the same as the president and the board of the Debtor Club. It was anticipated that the New Club would have the same membership as the Debtor Club. APA II was conditioned upon the approval of APA I by this court.

Under the terms of APA II, the New Club would assume the OIT Debt from the Original Buyer. In addition, the Original Buyer would lease office space from the New Club for three years and would pay the New Club 26% of its "cash available for distribution"[1] (if any) from the development of the Golf Property ("the Development Payments"). APA II provided that the first $700,000.00 of the Development Payments would be used to renovate the clubhouse on the Clubhouse Property. Any amount beyond $700,000.00 would be used to retire the OIT Debt. The United States trustee, certain creditors, and the unsecured creditors committee opposed the motion to sell.

The Court considered whether the Debtor demonstrated a good sound business justification for conducting the sale before confirmation, whether the price was fair and reasonable, whether the sale had been proposed in good faith, and whether there had been adequate notice of the sale.

---

[1] "Cash available for distribution" is a defined term in APA II.

The Court found that the Debtor had a good business reason for selling the property because its cash flow was a negative $30,000.00 per month and because it had no cash to fund the difference.  The Court concluded that the Debtor chose to sell its assets rather than reorganize its affairs, because it was unlikely that the Debtor would be able to weather the financial storm long enough to obtain approval of a disclosure statement and confirmation of a chapter 11 plan.

The Court considered whether the motion to sell the property was brought in good faith. When considered together, APA I and APA II could have resulted in Development Payments, in the potential amount of $500,000.00, to the New Club.  In effect, the Development Payments would have constituted a return of the sale price to the Debtor from assets that could have potentially benefitted the unsecured creditors.  The Court concluded that APA I and APA II considered together constituted a breach of the Debtor's duty to the unsecured creditors.  On this basis, the Court denied the motion to sell even though the Court was painfully aware that the Debtor was on the brink of financial ruin and that only imminent action would afford it a chance to continue as a viable entity.

The Debtor subsequently sold substantially all of its assets at an auction conducted by the Court.  The Debtor has now filed a motion to compensate counsel.   The United States trustee objects to that part of the compensation request that constitutes payment for services rendered in conjunction with the motion to approve APA I.

### *Discussion*

The United States trustee objects to that portion of the applicant's fees that arising from services rendered in connection with bringing the motion to approve the motion to sell the assets

of the Debtor, referred to herein as APA I.. The objection is based on the failure of the Debtor to disclose APA II. Compensation of professionals employed under 11 U.S.C. § 327 is to be considered according to the factors set out at 11 U.S.C. § 330(a)(3), which provides:

> (3) In determining the amount of reasonable compensation to be awarded to an examiner, trustee under chapter 11, or professional person, the court shall consider the nature, the extent, and the value of such services, taking into account all relevant factors, including--
> (A) the time spent on such services;
> (B) the rates charged for such services;
> (C) whether the services were necessary to the administration of, or beneficial at the time at which the service was rendered toward the completion of, a case under this title;
> (D) whether the services were performed within a reasonable amount of time commensurate with the complexity, importance, and nature of the problem, issue, or task addressed;
> (E) with respect to a professional person, whether the person is board certified or otherwise has demonstrated skill and experience in the bankruptcy field; and
> (F) whether the compensation is reasonable based on the customary compensation charged by comparably skilled practitioners in cases other than cases under this title.

The issue in this instance is whether the motion to sell the property of the estate under APA I was necessary to the administration of, or beneficial at the time at which the service was rendered toward the completion of the case. A motion to sell that cannot be granted cannot be reasonably necessary to the administration of the case. The motion to sell could not have been granted given the treatment of unsecured creditors that would have resulted when APA I and APA II were considered together. Accordingly, the motion for compensation will be granted, except for those fees that arose from services rendered in conjunction with the original motion to sell.[2]

---

[2] The resolution of this matter is based solely on the fact that the motion to sell was one that could not have benefitted the estate. No judgment is made regarding the quality of services rendered by counsel in this case, which the Court finds to have been commendable in light of its final resolution, especially given the time constraints and lack of financial resources faced by the Debtor.

5

*Conclusion.*

Counsel for the Debtor shall lodge an order that conforms with this memorandum.

Upon entry of this memorandum the Clerk shall forward a copy to the Richard C. Maxwell, Esq., and Margaret K. Garber, Esq., of the United States trustee's office.

Entered on this  1st  day of November, 2010.

_____
William E. Anderson
United States Bankruptcy Judge